# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

IGOR VASILYEVICH SAMOLYUK,

                      Petitioner,

    v.

PAMELA BONDI, *et al.*,

                    Respondents.

Case No. C26-472-SKV

ORDER GRANTING IN PART PETITON FOR WRIT OF HABEAS CORPUS

Petitioner Igor Vasilyevich Samolyuk is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody.  Dkt. 6.  Petitioner, who is proceeding through counsel, asserts that he is entitled to release from custody because removal to his former country of residence, Ukraine, is not reasonably foreseeable and his continued detention is therefore in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001).  *See id.* at 3.  Petitioner asserts additional claims related to third country removal.  *See id.* at 15-18.  Respondents have filed a return to the petition (Dkt. 9), together with the declarations of ICE Deportation Officer Gennadiy Baz (Dkt. 10), and Respondents' counsel, Alixandria K. Morris (Dkt. 11).  Petitioner has filed a reply to the return

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 1

(Dkt. 12).  This matter is now ripe for review.

The Court, having considered the parties' submissions and the governing law, GRANTS in part and DENIES in part Petitioner's petition for writ of habeas corpus, as set forth below.

## I.    BACKGROUND

Petitioner is a native and citizen of Ukraine.  *See* Dkt. 6 at 5; Baz Decl., ¶ 4.  Petitioner was lawfully admitted to the United States in September 1994 as the child of a refugee with lawful permanent resident status.  *See* Baz Decl., ¶ 5; Morris Decl., Ex. 2 at 3.

On September 22, 2006, ICE Office of Enforcement and Removal ("ERO") officers encountered Petitioner at the Benton County Jail in Kennewick, Washington, after he was arrested on charges of murder in the first degree and murder in the second degree.  Baz Decl., ¶ 6; Morris Decl., Ex. 2 at 2.  ERO thereafter lodged a detainer to have Petitioner turned over to the custody of the Department of Homeland Security ("DHS") upon his release from state custody.  *See id.*  On December 14, 2007, Petitioner was convicted of murder in the second degree in Benton County Superior Court, and he was sentenced to 250 months confinement.  Baz Decl., ¶ 7; Morris Decl., Ex. 2 at 2.  On the same date, Petitioner was convicted of fourth degree assault constituting domestic violence.  *See id.*

On March 31, 2025, Petitioner was released from Washington Department of Corrections custody into ICE ERO custody and was transferred to NWIPC.  Baz Dec., ¶ 8; Morris Decl., Ex. 2 at 2.  Petitioner was also served with a Notice to Appear (NTA) charging him with being subject to removal under the Immigration and Nationality Act ("INA") for having been convicted of an aggravated felony (INA § 237(a)(2)(A)(iii)), a crime involving moral turpitude

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 2

(INA § 237(a)(2)(A)(i)), and a crime of domestic violence (INA § 237(a)(2)(e)(i)).[1]  *See* Baz Decl., ¶ 9; Morris Decl., Ex. 1 at 4.

On July 25, 2025, an immigration judge ordered that Petitioner be removed to Ukraine and that order is administratively final.  Baz Decl., ¶ 12; Morris Decl., Ex. 3.  In August 2025, ERO was unable to remove Ukrainian nationals to Ukraine and ERO began exploring third country removal options.  Baz Decl., ¶ 13.  ERO spoke with Petitioner on September 12, 2025, and according to Deportation Officer Baz, Petitioner agreed to speak with his family and try to locate a third country for his removal.  *Id.*, ¶ 14.

On October 20, 2025, ERO Tacoma was notified that Petitioner was manifested for a removal flight to Ukraine on November 3, 2025, and Petitioner was transferred out of NWIPC for staging for removal on November 13, 2025.  Baz Decl., ¶¶ 15, 16.  However, on November 18, 2025, ERO was notified that Petitioner could not be removed on the flight he had been manifested for, and he was returned to NWIPC on November 29, 2025.  Baz Decl., ¶ 17, 18.

On December 17, 2025, ICE requested that Ukraine issue a travel document for Petitioner within seven days, but Ukraine declined.  Dkt. 6 at 5.  Deportation Officer Baz subsequently confirmed to Petitioner that Ukraine would not issue a travel document for him.  *Id.*

On February 20, 2026, an ERO officer met with Petitioner and Petitioner advised that Ukraine was not responding to him or to his family about obtaining a travel document.  Baz Decl., ¶ 19.  On the same date, ERO Tacoma was notified by a Detention and Deportation Officer at ERO Headquarters that Petitioner is stateless.  *Id.*, ¶ 20.  Officer Baz avers that ERO has resumed efforts to locate a third country which will accept Petitioner.  *Id.*, ¶ 21.

---

[1] These sections of the INA are set forth at 8 U.S.C. §§ 1227(a)(2)(A)(iii), (a)(2)(A)(i), (a)(2)(e)(i).

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 3

Petitioner initiated the instant action on February 12, 2026.  Petitioner asserts in his federal habeas petition that: (1) his continued detention violates the Due Process Clause of the Fifth Amendment because there is no significant likelihood that he will be removed in the reasonably foreseeable future; (2) any attempt to carry out his removal to a third country requires notice and a meaningful opportunity to be heard in reopened removal proceedings, as mandated by statute and the Constitution; and (3) Respondents' third-country removal program is punitive in nature and execution and is therefore unconstitutional under the Fifth and Eighth Amendments.  *See* Dkt. 6 at 14-18.

Respondents, in their return, argue that: (1) Petitioner's continued detention does not violate due process; (2) Petitioner's claim of fear of removal to a third country is already protected under exiting DHS policy; and (3) Petitioner's punitive banishment argument is speculative and does not demonstrate that DHS's third country removal policy is unconstitutional.  *See* Dkt. 9 at 7-11.

## II.       DISCUSSION

### A.       Indefinite Detention

Title 8 U.S.C. § 1231 governs the detention and release of noncitizens such as Petitioner who have been ordered removed.  Under § 1231(a), the Department of Homeland Security ("DHS") is required to detain a noncitizen during the 90-day "removal period."  8 U.S.C. §§ 1231(a)(1)(A), (a)(2).  After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, including those who are removable under § 1227(a)(2), or to release them on supervision.  8 U.S.C. § 1231(a)(6).  Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely.  *See* *Zadvydas*, 533 U.S. at 682.

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 4

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. *Zadvydas*, 533 U.S. at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id*. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. If the government is unable to meet its burden, then the noncitizen must be released from detention. *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

The six-month presumption is not a strict deadline; a noncitizen may be detained beyond six months if removal remains likely. *Zadvydas*, 533 U.S. at 701. Nevertheless, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

The record makes clear that Petitioner has been detained for over seven months since his removal order became final on July 25, 2025, and, thus, his detention is not presumptively reasonable. The record also makes clear that Petitioner cannot be removed to his native country, Ukraine, and that ICE has determined he is stateless. *See* Baz Decl., ¶¶ 13, 20. In addition, though ICE purportedly began "exploring third country removal" in August 2025 (*see id.*, ¶ 13), there is no evidence that any other country is willing to accept Petitioner's third country removal. While Respondents maintain that Petitioner has not met his burden, courts have routinely found that noncitizens in circumstances similar to those presented here have met their initial burden under *Zadvydas*. *See Temahagari v. Bondi*, 2026 WL 353264, at *5 (W.D. Wash. Feb. 9, 2026);

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 5

*Elshourbagy v. Bondi*, 2025 WL 3718993, at *4 (W.D. Wash. Dec. 23, 2025) (collecting cases). This Court similarly finds that Petitioner has shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

As Petitioner has met his initial burden, the burden now shifts to Respondents to rebut Petitioner's showing with evidence. Respondents offer little in the way of either evidence or argument to demonstrate Petitioner's removal is reasonably foreseeable, noting only that during Petitioner's seven months of post removal order detention, ICE has attempted to remove him to Ukraine and that, "after some back-and-forth with Ukraine, ICE is now actively seeking to find a suitable third county allowing for Petitioner's removal." Dkt. 9 at 9; *see also* Baz Decl., ¶ 21 ("ERO has resumed efforts to locate a third country that will accept Petitioner."). Respondents' representations are vague and therefore insufficient to show that Petitioner's removal to a third country is likely in the reasonably foreseeable future. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur.").

Respondents also argue that additional time to effectuate Petitioner's removal is warranted here given Petitioner's convictions for murder and domestic violence assault and ICE's inability to remove him to his native country. Dkt. 9 at 9. Respondents, however, cite no authority to support their suggestion that continued detention is warranted because of Petitioner's criminal history, and indeed, courts "have rejected the argument that *Zadvydas* permits different treatment of mentally ill or dangerous noncitizens." *Temahargari*, 2026 WL 353264, at *5 (citing *Tuan Thai v. Ashcroft*, 366 F.3d 790, 797-98 (9th Cir. 2004); *Tan v. Mukasey* 515 F.3d

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 6

478, 484 n.4 (5th Cir. 2008)).  The relevant question is whether there is a significant likelihood of Petitioner's removal in the foreseeable future, and Respondents offer no evidence that there is.

For the foregoing reasons, Petitioner is entitled to habeas relief with respect to his indefinite detention claim.

**B.    Third Country Removal**

In his second and third grounds for relief, Petitioner challenges his removal to a country other than Ukraine under the government's current policy on third-country removal.  *See* Dkt. 6 at 15-18.  Petitioner requests in relation to these claims that this Court: (1) Order that Respondents may not seek to remove him to a third country "without notice and [a] meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings"; and (2) Order that Respondents may not remove him to any third country "because Respondents' third-country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm." *Id.* at 18-19.

Respondents argue that the Court should deny Petitioner's requests for injunctive relief related to his third-country removal claims because they exceed the scope of federal habeas review.  However, because Petitioner invoked the Court's habeas and federal question jurisdiction, the Court could provide equitable relief on Petitioner's third country removal claims if Petitioner were to meet the standard for a permanent injunction.  *See* Dkt. No. 6 at 3; *see Roman v. Wolf*, 977 F.3d 935, 941-42 (9th Cir. 2020).

*1.    Due Process/INA*

Petitioner argues that prior to any third-country removal, he must be afforded notice and a meaningful opportunity to be heard, and he asserts that ICE's current third-country removal policy violates due process and relevant statutes and regulation because "it directs ICE agents to

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 7

remove individuals to third countries without any notice or process *at all* where diplomatic assurances are received and, where no diplomatic assurances are received, to provide flagrantly insufficient notice (6-24 hours) and opportunity to respond[.]"  Dkt. 6 at 15 (emphasis in original).

Where the government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but in doing so, it must comply both with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause.  *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar*, 2025 WL 3204724, at *2 (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings.").  To comply with due process, the government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country.  *Id.*

Similarly, the INA prohibits the government from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A). To comply with the INA, the government must "make a determination regarding a noncitizen's claim of fear before deporting him."  *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A). The noncitizen must also be notified that they may apply for asylum, withholding of removal, or relief under the Convention Against Torture.  *Aden*, 409 F. Supp. 3d at 1007 (citing 8 C.F.R. § 1240.11(c)(1) and *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) (outlining available remedies for noncitizens facing third-country removal)).  If a noncitizen claims fear of removal to a designated third country, the government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge.  *Aden*, 409 F.

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 8

Supp. 3d at 1011; *Baltodano v. Bondi*, 25-cv-1958RSL, 2025 WL 3484769, at *3–4 (W.D. Wash. Dec. 4, 2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 739 (W.D. Wash. 2025).

It is evident that Petitioner cannot be removed to his native country, Ukraine, which was also the country specified in his removal order. Thus, if Petitioner is to be removed, it will necessarily be to a third country. Respondents argue that "Petitioner's claim of fear of removal to a third country is already protected under existing DHS policy." Dkt. 9 at 9. However, courts in this district and elsewhere have concluded otherwise, ruling that Respondents' current third-country removal policy does not comport with due process and ordering relief similar to that requested here. *See e.g., Sophanthavong v. Bondi*, 2026 WL 638363, at *6 (W.D. Wash. Mar. 6, 2026); *Keskin v. Bondi*, 2026 WL 412294, at *6 (W.D. Wash. Feb. 13, 2026); *Francisco Lorenzo v. Bondi*, 2026 WL 237501, at *9-10 (W.D. Wash. Jan. 29, 2026); *Escobar v. Chestnut*, 2025 WL 3687639, at *4-6 (E.D. Cal. Dec. 19, 2025). This Court finds no basis to deviate from the courts' reasoning in these prior cases and, thus, concludes that Petitioner is entitled to notice and an opportunity to be heard before being removed to a third country.

### 2. *Punitive Nature of Removal Policy*

Petitioner also requests that the Court categorically prohibit his removal to any third country on the ground that Respondents' third-country removal program is unconstitutionally punitive in all applications. Dkt. 6 at 16-18. On the present record, the Court declines to make such a broad ruling. The relief granted in this Order requiring notice and a meaningful opportunity to be heard will allow Petitioner to challenge any particular proposed third-country removal where he can show a risk of imprisonment or other serious harm, and nothing in this Order prevents him from pursuing additional relief if warranted by future events.

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 9

### III.   CONCLUSION

Based on the foregoing, this Court ORDERS as follows:

(1)     Petitioner's petition for writ of habeas corpus (Dkt. 1) is GRANTED in part.

(2)     Respondents SHALL release Petitioner from immigration detention within 24 hours subject to reasonable conditions of supervision.  Respondent SHALL file a certification within 48 hours that Petitioner has been released.

(3)     Respondents SHALL NOT remove or attempt to remove Petitioner to any third country without providing Petitioner and his counsel, if any, at least **ten (10) days'** written notice identifying the proposed country of removal and affording Petitioner a meaningful opportunity to be heard in reopened removal proceedings before an immigration judge, including the opportunity to seek any available protection or relief.

DATED this 17th day of March, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION
FOR WRIT OF HABEAS CORPUS - 10